A91A1799. DUNKIN' DONUTS OF AMERICA, INC. et al. v.
GEBAR, INC. et al.
(414 SE2d 683)

Sognier, Chief Judge.

George and Barbara Bellinger and their corporation, Gebar, Inc. (collectively the Bellingers), brought suit against Dunkin' Donuts of America, Inc. and Georgia Donuts, Inc. (collectively "Dunkin' Donuts"), and The Golden Circle, Inc. and its principals Jeffrey and Steven Weiss. The suit arose out of a purchase option agreement executed by the Bellingers, as sellers, and Dunkin' Donuts, as purchasers, for sale of the Bellingers' franchise. Dunkin' Donuts later assigned its interest in this agreement to Golden Circle, Inc. and the Weisses (collectively referred to as "GCI"). In their complaint, the Bellingers alleged that in purchasing the Bellingers' franchise, GCI had, with the advice and consent of Dunkin' Donuts, breached the purchase option agreement by improperly withholding certain funds required to be withheld from the purchase price and held in escrow at the closing of the sale, and had conspired to defraud the Bellingers of these funds. Although both GCI and Dunkin' Donuts filed answers to the complaint, GCI's counsel withdrew from representation shortly thereafter and GCI did not participate in the trial. The action was tried by a jury, which returned a verdict for the Bellingers against Dunkin' Donuts in the amount of $125,000, and judgment was entered thereon. Dunkin' Donuts appeals from the trial court's denial of its motion for judgment n.o.v. or, alternatively, for a new trial. No judgment was entered against GCI and it is not involved in this appeal.

1. In three enumerations, appellant contends the trial court erred by denying its motions for directed verdict and judgment n.o.v.

(a) We do not agree with appellant that the trial court erred by denying its motions for directed verdict and j.n.o.v. as to appellees' claim for breach of contract. The motions were made on the ground that after appellant transferred the purchase option agreement to GCI, a contractual relationship no longer existed between appellant and appellees. Although appellant's assignment of the purchase option agreement to GCI at closing terminated appellant's contractual relationship with appellees, the closing memorandum, prepared and signed by appellant, specifically imposed upon appellant an obligation to disburse the $20,000 escrowed funds, which the memorandum recited were in its possession, in accordance with the provisions in the purchase option agreement. Since appellees' contract claim was based on the alleged breach of the duty imposed by this provision in the closing memorandum, the motions were properly denied by the trial court on this ground.

(b) Appellant also maintains the trial court erroneously denied its motions because appellees had unconditionally released it from lia-

bility for all claims. We note initially that we cannot agree with appellees that appellant is precluded from raising its defense of release by the omission of that defense from the pretrial order. See OCGA § 9-11-16 (b). Omission of an issue from a pretrial order is not controlling if evidence pertaining to the issue is introduced without objection, the opposing party is not unfairly surprised, and the issue is actually litigated. *Carreras v. Austell Box Bd. Corp.*, 154 Ga. App. 135, 138 (267 SE2d 792) (1980). In this case, omission from the pretrial order was not a bar because the releases executed by appellees and their testimony regarding their understanding of the releases were introduced into evidence without objection, and it is obvious that all parties knew of the existence of the releases.

The releases in issue are a "general release" and a "termination of franchise agreement and release" signed by appellees at closing. Appellees' claims against appellant in regard to its handling of the escrowed funds necessarily arose only after the closing at which appellant's duty to appellees regarding those funds was created (see Div. 1 (a), supra). As the releases contained clear language releasing all claims of any nature "from the beginning of the world *to the date of these presents*" (emphasis supplied) and to indemnify and hold appellant harmless against any claims prior to the date of closing, it follows that the releases signed by appellees did not cover the claims which are the subject of this action.

Moreover, the law requires that in the interpretation of contracts reasonable, lawful, and effective meaning be given to *all* manifestations of intention by the parties, rather than leaving a part of the parties' manifestations of intent with no effect, *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981), and " '[w]here instruments are executed at the same time in the course of the same transaction, they should be read and construed together.' [Cits.]" *Interstate Fire Ins. Co. v. National Indem. Co.*, 157 Ga. App. 516, 518 (277 SE2d 802) (1981). Accordingly, because the interpretation urged by appellant would render its obligation created at the closing regarding the escrowed funds meaningless and unenforceable, see *Whitmire*, supra, we cannot agree with appellant that the releases executed by appellees contemplated releasing a claim for the future breach of an obligation created at the same closing.

(c) The standard of review of the denial of a motion for directed verdict or j.n.o.v. is the "any evidence" test. *Stolle Corp. v. McMahon*, 195 Ga. App. 270, 273 (3) (393 SE2d 52) (1990). Contrary to appellant's contention, our review of the transcript reveals some evidence to support an award of damages for fraud and conspiracy. Construed to support the verdict, as required, id., the material evidence at trial showed that the purchase option agreement provided that $20,000 would be held in escrow at closing for the correction of

deficiencies in the store, but that those deficiencies were to be identified before closing. Under the escrow provision, appellant was required to give appellees ten days notice of bills it wished to pay with the escrowed funds during which period appellees could either contest or acquiesce in the payments. After 60 days, any balance remaining in escrow was to be forwarded to appellees and the escrow terminated.

A routine deficiency status report was prepared on August 12, 1987, identifying those conditions in the store which did not meet appellant's standards. However, the contract provided that the purchaser was to be solely responsible for the final determination of deficiencies, and several days after closing, on October 29, 1987, Jeffrey Weiss, President of GCI, signed the bottom of the deficiency status report, under a handwritten notation stating that "[a]ll items on this list of deficiencies have been corrected as of this date and is certified by the parties signing below." Despite that certification, the entire $20,000 held in escrow by appellant since closing was released to GCI shortly thereafter. Subsequently, on December 31, 1987, appellant's then district sales manager, Michael Maher, sent a letter to appellees informing them that over $18,000 of the escrow funds had been spent for repairs and renovations to the shop, and enclosing invoices for these items. At the same time, GCI sent appellees a check for $2,000 as a "partial payment from escrow," which appellees returned unnegotiated.

Maher testified that various aspects of the transaction were contrary to the usual practices of appellant. He noted that relatives of the Weisses were friends of principal stockholders of appellant, and stated that appellant extended to GCI more favorable terms than were usual and provided for an unusually high amount of escrow. Maher opined that the store met appellant's standards as of the closing, but that he was instructed by his superiors to write the December 31, 1987 letter. He also testified that he "vehemently disagreed with the releasing of the $20,000 escrow. It was highly irregular. It basically took away the control that [appellant] had as to how and where money was being spent." Moreover, evidence was adduced to show that the purchasers used the funds to remodel the store rather than to correct deficiencies. From the evidence presented, the jury would have been authorized to conclude that appellant and GCI conspired to defraud appellees of $20,000 to remodel the store, and that appellant represented to appellees that the funds would be held in escrow and used only to correct the listed deficiencies and the balance refunded when it knew that was not the case. Accordingly, we find that the trial court correctly denied appellant's motions for a directed verdict and j.n.o.v. as to the fraud and conspiracy claims.

(d) Appellees have conceded that they are not seeking to collect attorney fees, and that the jury's award of unspecified attorney fees

was improper. Accordingly, we need not address appellant's enumeration that the trial court erred by denying its motions for a directed verdict and j.n.o.v. as to this issue. That portion of the judgment awarding attorney fees must be written off.

2. Any failure to instruct the jury as to the meaning and effect of the releases was harmless error, as we have held that the releases executed at closing clearly pertained to accrued claims, appellees' claim which forms the subject matter of this action had not yet accrued at that time, and the jury returned a verdict for appellees. To warrant reversal, error alleged must be harmful. *Mitchell v. Southern Gen. Ins. Co.*, 194 Ga. App. 218, 220 (4) (390 SE2d 79) (1990).

Although appellant maintains there was insufficient evidence of fraud and conspiracy to warrant the trial court's charge on those issues, we have held in Division 1 (c), supra, that there was sufficient evidence of fraud and conspiracy to support the jury's verdict, and accordingly, we find no merit in this contention.

3. Appellant finally contends the trial court erred by failing to follow the mandate of OCGA § 51-12-5.1 (d), which requires that when punitive damages are prayed for, the trial be bifurcated and the jury required to determine first, by an appropriate form of verdict, whether such damages are awardable, and only then setting an amount. The record reveals, however, that appellant acquiesced in the form of verdict used, and that its only objection was that a form be used which allowed the jury to find against GCI as well. That objection was sustained, and appellant agreed with the corrected verdict form. Accordingly, appellant has no basis for complaint in this regard. *Miles Rich Chrysler-Plymouth v. Mass*, 201 Ga. App. 693, 694 (1) (411 SE2d 901) (1991).

*Judgment affirmed with direction that the award of attorney fees be written off; otherwise reversed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JANUARY 7, 1992.

Smith, Gambrell & Russell, David C. Newman, Pamela R. Masters, E. Kendrick Smith, for appellants.

Richardson, Chenggis & Constantinides, Platon P. Constantinides, for appellees.