A95A0290. BOWERS et al. v. GREENE et al.
A95A0291. OWENBY v. BOWERS et al.
(458 SE2d 150)

RUFFIN, Judge.

Real estate brokers James Bowers and William Humphlett sued Darrell Greene, Paul Owenby and Al Hallman, Jr. ("the owners") to recover a real estate commission allegedly due upon the sale of the owners' property.

In early 1987, Bowers and Humphlett learned the United States Postal Service ("Postal Service") was interested in purchasing property in east Cobb County and contacted the owners concerning a possible sale of approximately eight acres they owned. The owners informed Bowers and Humphlett they were interested in selling the

property, and on February 19, 1987, the parties entered into a listing agreement. The listing agreement described the land, stated that Bowers and Humphlett were offering it for sale to the Postal Service at $130,000 per acre and provided that if a sale were consummated, the sellers would pay Bowers and Humphlett a ten percent brokerage commission. The agreement did not contain a termination date. On February 25, 1987, Bowers sent the Postal Service an offer to sell the property on behalf of the owners providing that the offer would remain open for 60 days. Although the offer was not accepted within 60 days, Bowers and Humphlett continued meeting with the owners, Postal Service representatives and other parties concerning the surveying, appraisal and rezoning of the property.

In October 1987, the Postal Service notified Bowers that due to budgetary problems, purchase of the property was put "on hold." At some point thereafter, the owners instructed Bowers and Humphlett to cease contact with Postal Service representatives and told them the owners' attorney would handle future negotiations. The owners then submitted a new contract to the Postal Service without the assistance of Bowers and Humphlett. That contract provided the offer would remain open until October 25, 1988, and that the owners would pay Bowers and Humphlett the real estate commission. On February 15, 1989, the Postal Service sent the owners a letter informing them that although the property was "attractive for postal development" and they "had every intention of acquiring [the] site," budget restraints necessitated using space in an existing facility that would be "adequate for the foreseeable future."

In February 1990, Humphlett presented the owners with a proposed contract from another entity desiring to purchase the property. This purchaser, however, could not acquire the necessary permits and the sale was not consummated. On December 10, 1990, in response to an inquiry from the Postal Service made directly to them, the owners executed another offer to sell the property for $110,000 per acre. Bowers and Humphlett did not help negotiate this offer and did not learn about the offer until the spring of 1991 when a Postal Service appraiser contacted Humphlett regarding property values in the area.

In his deposition, Humphlett testified that after learning of the negotiations, he telephoned Greene who told him to do whatever he "could to facilitate the sale." Bowers and Humphlett also met with Greene at his office to ask "if there was anything else that he wanted [them] to do and also to reconfirm the commission situation." In his deposition, Bowers testified that at the meeting, Greene instructed him to "keep in touch with the post office now, and to inform him of all matters that [he] could determine and find out relating to their interest in the property." Bowers further stated that Greene told him and Humphlett that they "had certainly done [their] duty and . . .

that the real estate fee was due . . ." but that they needed to contact Owenby. When Bowers contacted Owenby and told him that he and Humphlett were entitled to the commission under the 1987 listing agreement, Owenby told him no commission was due.

The Postal Service consummated its purchase of the property on October 11, 1991, and Bowers and Humphlett were not paid any commission. Bowers and Humphlett sued for breach of contract and quantum meruit. The trial court granted the owners' motion for summary judgment on the contract claim but denied their motion on the quantum meruit claim. Both parties appealed from the order.

*Case No. A95A0290*

1. Bowers and Humphlett assert the trial court erred in granting the owners' motion for summary judgment on their claim for breach of contract. We agree. "[A] broker is entitled to a commission whenever negotiations conducted by him on behalf of the principal culminate in the purchase of the property . . . or would have so culminated but for the principal's interference. The agreement between the parties [in this case] did not provide that [Bowers and Humphlett] were the exclusive agents for [the owners]. Thus, as nonexclusive agents, [Bowers and Humphlett] were entitled to recover the commissions . . . claimed only upon proof that they were the procuring cause of the [sale], which can be established by showing that negotiations for the sale were set on foot through their efforts, that they performed every service required by their employment which it was possible to perform, and that the failure on their part to personally consummate the trade was due to the interference of the [owners]." (Citations and punctuation omitted.) *Realty World &c. v. Hooper Properties*, 191 Ga. App. 773, 775 (2) (383 SE2d 164) (1989). Even if a purchaser buys directly from the owner at a price less than that given to the broker, if the broker's effort was the procuring cause of the sale, the owner is liable for the commission. *Tidwell & Yarbrough Realty Co. v. Foster*, 123 Ga. App. 192 (1) (180 SE2d 259) (1971).

Construing the evidence most strongly against the owners and giving the benefit of all reasonable doubts and all favorable inferences to Bowers and Humphlett, we cannot say as a matter of law that Bowers and Humphlett were not the procuring cause of the sale of the property to the Postal Service. See *Realty World*, supra at 776. Although the owners argue that Bowers and Humphlett abandoned their efforts and did not participate in the negotiations that ultimately resulted in the sale, the record shows that both brokers actively negotiated with the Postal Service, obtained the necessary surveys, appraisals, and zoning and otherwise continued their market-

ing efforts until the owners instructed them to cease contact and that their attorney would handle future negotiations. At that point the owners continued their efforts to sell the property to the Postal Service, despite being informed that budget problems would delay the sale.

These efforts, which were a continuation of Bowers' and Humphlett's efforts, eventually resulted in a sale. The fact that Humphlett presented the owners with a contract from a different entity in February 1990, indicates the brokers did not intend to abandon their marketing efforts. Whether the sale was consummated without further assistance from Bowers and Humphlett could be attributed to the owners' directive to cease contact with the Postal Service, and the question of whether Bowers and Humphlett would have ultimately consummated the sale to the Postal Service but for the owners' interference are questions for the jury. See id.

Finally, although a significant period of time elapsed between execution of the listing agreement and consummation of the sale, since no time limit was fixed by the listing agreement, it continued for an indefinite period of time, giving Bowers and Humphlett a reasonable period of time to sell the property. See *Spence v. Walker*, 92 Ga. App. 609 (1) (89 SE2d 668) (1955). What is a reasonable time under the circumstances of this case is a question of fact for the jury. Id. Accordingly, the trial court erred in granting the owners summary judgment on Bowers and Humphletts' claim for breach of contract.

## Case No. A95A0291

2. The owners assert the trial court erred in ruling that a quantum meruit cause of action existed. " 'Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof.' OCGA § 9-2-7. 'Generally, an action of this type is one upon quantum meruit.' [Cit.]" *Futch v. Guthrie*, 176 Ga. App. 672, 673 (1) (337 SE2d 384) (1985). The record reflects that the owners engaged Bowers and Humphlett to sell the property and that Bowers and Humphlett informed the Postal Service the property was available. In that regard, Bowers and Humphlett submitted an offer to sell on behalf of the owners, negotiated sale terms with the Postal Service, and continuously met with Postal Service representatives and other parties concerning the surveying, appraisal and rezoning of the property. These services, which were accepted by the owners, ultimately resulted in the profitable sale of their property. " 'Under these circumstances, the jury [would be] allowed to decide whether [Bowers and Humphlett are] entitled to any recovery in quantum meruit.' [Cit.]" Id. Accordingly, the trial court did not err in denying the owners' mo-

tion for summary judgment on Bowers' and Humphletts' quantum meruit claim.

3. While the owners further assert the trial court erred in relying on an unreported opinion of this court, this reliance is of no relevance since a judgment of the trial court that is right for any reason will be affirmed on appeal. *DeLoach v. Ga. Firemen's Pension Fund*, 213 Ga. App. 202 (2) (444 SE2d 137) (1994).

*Judgment affirmed in part and reversed in part. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MAY 23, 1995.

*Harris, Phillips & Harris, R. Britt Harris, Jr.,* for appellants.

*H. Darrell Greene & Associates, Patrick H. Head, Peterson, Dillard, Young, Self & Asselin, Dick Wilson, Jr., Susan W. Housen,* for appellees.