A97A1270. GREENE et al. v. BOWERS et al.
(493 SE2d 709)

BLACKBURN, Judge.

James D. Bowers and William R. Humphlett sued H. Darrell Greene, Paul Owenby, and the estate of Al F. Hallman, Jr., seeking to recover commissions allegedly due on the sale of certain real estate to the United States Postal Service. In *Bowers v. Greene,* 217 Ga. App. 468, 470 (1) (458 SE2d 150) (1995), we reversed the trial court's grant of summary judgment to defendants on plaintiffs' claim for breach of contract, and affirmed the court's denial of summary judgment on plaintiffs' quantum meruit claim. Following a trial, the jury awarded plaintiffs $62,770.20 from Greene and $41,846.80 from Owenby. The jury did not award any damages against Hallman's estate. Greene and Owenby appeal, contending that the court erred in denying their motions for directed verdict, j.n.o.v., and new trial. They also contend that the court erred in admitting certain evidence and in allowing

improper closing argument. For the reasons set forth below, we affirm.

1. Appellants claim that the trial court erred in denying their motions for j.n.o.v. or for a new trial because there was no evidence that Bowers and Humphlett were responsible for the sale of the property to the Postal Service. "The standard for review of a directed verdict and a judgment n.o.v. are the same: Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. And, the standard of appellate review of the trial court's denial of a motion for a directed verdict [or j.n.o.v.] is the 'any evidence' standard." (Punctuation omitted.) *Halta v. Bailey*, 219 Ga. App. 178, 180 (2) (464 SE2d 614) (1995); see also *Dunkin' Donuts of America v. Gebar, Inc.*, 202 Ga. App. 450, 451 (1) (c) (414 SE2d 683) (1992). "The 'trial (court's) denial of a motion for new trial on evidentiary grounds will be reversed on appeal only if there is *no* evidence to support the verdict.' " *Mansfield v. Pizza Hut of America*, 202 Ga. App. 601, 602 (415 SE2d 51) (1992).

The relevant facts of this case are as follows. In late 1986 or early 1987, Bowers, a real estate broker, learned that the United States Postal Service was seeking to purchase approximately six to eight acres of property in east Cobb County for a new postal facility. Bowers contacted Humphlett, another real estate broker, to see if he knew of any suitable property. Humphlett then contacted Greene, who he believed owned a 25-acre tract of land in the area.

Bowers and Humphlett met with Greene, who agreed to offer a portion of the 25-acre parcel to the Postal Service at a price of $130,000 per acre and to pay a commission to Bowers and Humphlett upon completion of the sale. Bowers and Humphlett prepared a commission agreement providing that they would receive a ten percent commission upon the sale of the property to the Postal Service, and presented this document to Greene. The commission agreement did not contain a termination date. At this time, Bowers and Humphlett were under the belief that Greene owned the entire 25-acre parcel. However, Greene did not in fact own the entire tract; portions were owned by Owenby and Hallman. On or about February 19, 1987, Greene, Owenby, and Hallman each executed the commission agreement and returned it to Bowers and Humphlett.

Bowers and Humphlett commenced negotiations with the Postal Service regarding the sale of the property. On February 25, 1987, they presented to the Postal Service an offer to sell approximately eight acres at a price of $130,000 per acre. This offer was signed by Greene, Owenby, and Hallman, although Greene later testified that he did not own any part of this parcel. The Postal Service expressed strong approval of the site, but required that the property be

rezoned. Bowers met with the owners to select a development plan to submit to the county for rezoning. The owners hired an attorney to represent them in the rezoning procedure. Bowers, Humphlett, and the Postal Service representative accompanied the owners to the zoning hearing, and the county agreed to rezone the property for a post office only, subject to certain conditions.

Bowers then met with the Postal Service representative and others to discuss any possible problems that would need to be addressed prior to closing. The Postal Service required that the owners remove a house located on the property, which the owners accomplished. After a satisfactory appraisal was obtained, it appeared that closing was imminent. However, around October 1987, the Postal Service informed the parties that, because of a recent budget bill passed by Congress, it could not close on the purchase of the property at that time. The Postal Service encouraged the owners to continue negotiations.

At this time, in the fall of 1987, Greene instructed Bowers and Humphlett to cease any further contact with the Postal Service, and informed them that all future negotiations would be conducted by the owners and their attorney. Thereafter, the owners submitted a new proposed contract to the Postal Service, providing for closing to occur by October 25, 1988. This contract also provided that a commission would be paid to Bowers and Humphlett. The seller was identified as "Johnson Mill Associates," a joint venture consisting of Greene, Owenby, and Hallman. However, in February 1989, the Postal Service informed the owners that they could not close the deal.

Pursuant to the owners' instructions, Humphlett and Bowers did not attempt to continue negotiations with the Postal Service. However, Humphlett continued to try to market the property. In February 1990, Humphlett, Greene, and Owenby signed a separate commission agreement relating to a potential sale of approximately six acres of property to another entity, Cobb Healthcare Associates. Hallman did not execute the agreement because he had sold his portion of the property to Owenby. The property offered to Cobb Healthcare consisted of a portion of the property previously offered to the Postal Service. Although a sales contract was executed with Cobb Healthcare, the deal did not ultimately close.

In 1990, a representative of the Postal Service contacted Greene to see if he was still interested in selling the property. On December 10, 1990, the owners presented a written offer to sell 7.2683 acres of property to the Postal Service at a price of $110,000 per acre. This was the same piece of land that had previously been rezoned by the county. The offer was signed by Greene, Owenby, and Hallman.

The owners did not notify Bowers or Humphlett of the offer or of the Postal Service's renewed interest in the property. However, in

May 1991, Humphlett heard that the Postal Service was appraising the property and was again interested in the site. Humphlett and Bowers then went to see Greene on June 11. According to Bowers, Greene acted surprised that the Postal Service was interested, and said that he had not heard from them except for one phone call several months earlier. He did not inform them that he had already submitted a written offer to the Postal Service. Bowers testified that Greene told them to contact the Postal Service to see if there was any interest. Humphlett testified that Greene told them to stay on top of the situation and report back to him about what was happening with the Post Office. Greene said that, as far as he was concerned, the brokers would receive their commission, but he would need to check with Owenby.

Humphlett tried to reach Owenby by telephone for 17 days, but Owenby did not return his calls. On June 28, Humphlett wrote a letter to Greene, Owenby, and Hallman, seeking confirmation that a commission would be paid upon consummation of a sale to the Postal Service. Humphlett stated that, unless he heard otherwise within five days, he would assume that the owners agreed he and Bowers were entitled to a commission.

Following the June 11 meeting with Greene, Bowers contacted the Postal Service representative, Kelly Pfrimmer, offering to assist in facilitating the transaction. On July 12, Bowers wrote Greene to inform him that he had met with a Postal Service appraiser and provided information to assist in preparing an acceptable appraisal. In August, Humphlett spoke with the Postal Service's appraiser regarding the value of the property. On August 16, Bowers wrote Greene and Owenby to inform them that he had attended a meeting with the facilities service manager for the Postal Service, and that he had been informed that the appraisal had been approved and that closing should take place within approximately six weeks.

On August 23, Bowers received a letter from Owenby's attorney, stating that Bowers had not been authorized to present the property to the Postal Service. On October 11, 1991, the sale to the Postal Service was consummated. The warranty deed conveying the property to the Postal Service was executed by Owenby, but not by Greene or Hallman. On October 10, the day before the sale, Greene had executed a quitclaim deed to Owenby, conveying any interest Greene may have possessed in the property to Owenby. Greene claimed that he did not in fact own any part of the property sold to the Postal Service, and that he had executed the quitclaim deed at the Postal Service's request merely to clear up a discrepancy in the boundary line between such property and adjacent property owned by him.

As we recognized in our earlier decision in this case, "[a] broker is entitled to a commission whenever negotiations conducted by him

on behalf of the principal culminate in the purchase of the property or would have so culminated but for the principal's interference. The agreement between the parties in this case did not provide that Bowers and Humphlett were the exclusive agents for the owners. Thus, as non-exclusive agents, Bowers and Humphlett were entitled to recover the commissions claimed only upon proof that they were the procuring cause of the sale, which can be established by showing that negotiations for the sale were set on foot through their efforts, that they performed every service required by their employment which it was possible to perform, and that the failure on their part to personally consummate the trade was due to the interference of the owners." (Punctuation omitted.) *Bowers v. Greene*, supra at 470.

On the above facts, there was sufficient evidence to support the verdict. It is undisputed that Bowers and Humphlett were responsible for bringing the Postal Service to the attention of appellants, and that negotiations with the Postal Service were set on foot through their efforts. They were active participants in the initial negotiations which, but for the unexpected budget problems, would likely have resulted in the closing of the sale. There was evidence from which the jury could have concluded that the Postal Service's inability to consummate the initial transaction was merely a temporary setback caused by budgetary problems, and that continued negotiations would have led to a final sale. Indeed, there was evidence that, when the Postal Service was in a position to purchase the property, it did not advertise for a suitable location as it had done previously, but merely contacted Greene directly about this particular property.

There was also evidence that plaintiffs performed every service required by their employment which it was possible to perform. Plaintiffs' failure to continue active negotiations with the Postal Service was caused by appellants' direct instructions that they cease all contact with the Postal Service. As we recognized in our prior opinion, the fact that "the sale was consummated without further assistance from Bowers and Humphlett could be attributed to the owners' directive to cease contact with the Postal Service, and the question of whether Bowers and Humphlett would have ultimately consummated the sale to the Postal Service but for the owners' interference [was a] question[ ] for the jury." *Bowers*, supra at 471 (1). The jury having decided such issue in favor of Bowers and Humphlett, we will not interfere with its judgment.

2. Greene contends that he was entitled to a directed verdict or j.n.o.v. because there was no evidence that he owned any portion of the property actually conveyed to the Postal Service. As an initial matter, we note that not all the relevant plats to this action are contained in the record transmitted to this Court on appeal. However,

Greene signed the commission agreement with Bowers and Humphlett, and they acted pursuant to such agreement. Greene's later testimony that he did not own any of the property initially offered to the Postal Service in February 1987, does not change his commitment to pay a commission upon the sale of such property. Notwithstanding his lack of ownership, Greene does not contend that he would not have been liable for a commission if the original sale had closed. He testified that he, Owenby, and Hallman had agreed to market their separately-owned property together and that he would derive a benefit from the sale.

Although Greene claims that he had withdrawn from his arrangement with Owenby and did not receive any benefit from the ultimate sale of the property to the Postal Service, the jury was free to believe otherwise. It is undisputed that Greene signed the final offer to sell the property to the Postal Service even though he claims not to have owned any of the property. He also executed a quitclaim deed to Owenby the day before the sale. Furthermore, after they learned of the Postal Service's renewed interest in the property, Bowers and Humphlett testified that Greene instructed them to continue contacts with the Postal Service and report back to him. They testified that Greene never denied during these conversations that he would be liable for a commission upon consummation of the sale; indeed, he indicated that as far as he was concerned a commission would be payable, but that he would need to check with Owenby. The jury could have inferred from these facts that Greene's arrangement with Owenby to jointly market and sell the property was still in effect, and that Greene was thus liable for commissions pursuant to the agreement with Bowers and Humphlett.

3. Appellants contend that the verdict was improper because no award was made against Hallman. They contend that the commission agreement contemplates joint and several liability, and that the failure to enter an award against Hallman is inconsistent with the awards against Greene and Owenby.[1] This contention is without merit. Prior to the sale to the Postal Service, Hallman sold his interest in the property to Owenby. Humphlett admitted that, at the time of the sale to the Postal Service, he knew Hallman did not own any of the property. Indeed, prior to the sale to the Postal Service, when Humphlett was negotiating the potential sale of the property to Cobb Healthcare Associates, he entered into a commission agreement with Owenby and Greene, but not with Hallman, because Hallman had sold his portion of the property. Accordingly, the jury could have

---

[1] Appellants do not contend that they were harmed by the jury's entry of separate awards against Greene and Owenby, instead of a joint and several award.

found that Hallman was no longer involved in the venture and that all parties understood he had been released from his original obligation to pay a commission on the sale of the property.

4. Greene and Owenby contend the court erred in overruling their objection to plaintiffs' closing argument, alleging that plaintiffs argued matters not in evidence. However, as the closing arguments were not transcribed, there is nothing for this Court to review, and this enumeration is without merit. See *Hand v. State*, 206 Ga. App. 501, 504 (5) (426 SE2d 18) (1992).

5. Greene and Owenby contend the court erred in admitting two plats into evidence, arguing that a proper foundation was not laid for their admission. However, the trial court admitted the documents on the grounds that the parties had stipulated to their admissibility in the pre-trial order. The pre-trial order provided that documents identified in the attached exhibits would be admitted without further proof of authenticity. Plaintiffs' documentary exhibit listed numerous deeds and "[v]arious plats depicting the property in the above-referenced deeds." Plaintiffs' attorney advised the court that the plats in question had been provided during the pre-trial conference, and defendants' attorney did not contradict this fact. Accordingly, the court was authorized to find that the plats were covered by the pre-trial order, and did not err in overruling defendants' objection to admissibility of the plats.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 11, 1997 —
RECONSIDERATION DENIED NOVEMBER 13, 1997 — 

*H. Darrell Greene & Associates, Paul Shimek III*, for appellants.
*R. Britt Harris, Jr.*, for appellees.