69694, 69862. GOLD KIST, INC. v. WILLIAMS; and vice versa.

(332 SE2d 22)

POPE, Judge.

These companion cases arise from a dispute over peanut seed sold by Gold Kist to J. B. Williams. Gold Kist sued Williams on an open account. Williams filed a counterclaim alleging that the seed was defective. Before trial the parties stipulated the amount due on the open account, and trial proceeded on the counterclaim. The court directed verdicts in favor of Gold Kist on the counts based upon negligence, strict liability and express warranty, and submitted to the jury the issues of implied warranty for fitness for a particular purpose and implied warranty of merchantability. The jury returned a verdict in favor of Williams in the amount of $7,900. The court entered judgment in favor of Gold Kist on the open account in the amount of $4,608.64 plus appropriate specified interest on the amount; simultaneously, the court entered judgment for Williams on the counterclaim in the amount of the verdict plus appropriate interest. The court assessed costs on the action equally between Gold Kist and Williams.

## Case No. 69694

1. In the main appeal, Gold Kist alleges that it was error for the court to submit the case to the jury on the issues of implied warranties. Regarding the implied warranty of fitness for a particular purpose, we agree with the characterization of the trial court that the evidence in support of the theory may have been slight, but was enough to present a jury issue. OCGA § 11-2-314 provides that unless excluded, a contract of sale implies a warranty of merchantability of the goods. OCGA § 11-2-314 (2) defines merchantable as follows: "Goods to be merchantable must be at least such as: (a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any."

Williams presented testimony from the county extension agent, Ernie Purcell, and Dr. Ron Henning, an extension specialist with the University of Georgia, that the crop Williams got from the Gold Kist seed was not germinating as it should. Each had visited the Williams' farm and had observed the crop. Dr. Henning testified that his observation of the crop led him to believe that the seed had been mechani-

cally damaged. Each of the extension officials also testified that the root system of many of those plants that developed were abnormal. Williams testified to many of the same observations regarding the damage to the seed and the uneven emergence of the peanut crop. In addition, Williams testified that, because of the excessive curling and tangling of the root systems of the plants, the plants were more difficult to harvest. The jury heard testimony from Paul L. "Bunky" Bridges, a fellow farmer of Williams, that he too had planted some of the Gold Kist seed apparently from the same lot and under substantially the same conditions, and that he also had had the same or similar problems with his crop.

" 'It is not the responsibility of this court to weigh the evidence in regard to the action brought. Our task is merely to determine if there is sufficient evidence to authorize the trial court's judgment. If there is any evidence to support the jury's verdict and the trial court's judgment, then all conflicts in the evidence will be resolved to favor the verdict.' [Cit.]" *Ellis v. Cameron & Barkley Co.*, 171 Ga. App. 211, 213 (319 SE2d 38) (1984). After careful examination of the record, we find that there was sufficient evidence to submit the case to the jury on the issues of implied warranties.

2. Gold Kist also argues that there was insufficient evidence to support the jury's award of damages. Our review of the record does not support this contention. Williams testified regarding his cost for the seed, the extra work needed to nurture the crop and the cost of that extra work. The amount awarded by the jury is within the ambit of the evidence presented.

*Case No. 69862*

3. In the cross-appeal Williams argues the trial court erred in entering judgment separately on the main claim and the counterclaim. It is his contention that the amount of Gold Kist's recovery on the open account should have been set-off against the verdict returned in his favor on the counterclaim. Although the trial court indicated in colloquy before the beginning of trial that the set-off procedure might be used, there was no definite agreement by the court to do so. We find no error in the court's entry of separate judgments.

4. Nor do we find any error in the trial court's casting of costs. Costs were split equally between the parties. OCGA § 9-11-54 (d) gives the trial court discretion in assessing costs. The statute sets out the general rule that the losing party normally pays the costs; however, in the present case, each party won. Therefore, we feel that the court's apportionment of costs was entirely appropriate.

*Judgments affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED MAY 23, 1985.

*J. Converse Bright, Richard J. Joseph,* for appellant.
*Rikard L. Bridges,* for appellee.