A95A1844. MOREY et al. v. BROWN MILLING COMPANY.
(469 SE2d 387)

ANDREWS, Judge.

Larry Morey and J & L Farms appeal the trial court's granting of Brown Milling Company's motion for directed verdict in a jury trial on Brown's claim for money owed on a promissory note. Morey and J & L Farms claim on appeal that there were issues of fact concerning the balance due on the note, their defenses of failure of consideration, equitable estoppel, and the Georgia Seed Law, and their counterclaims for damages for breach of contract and implied warranties. We affirm the judgment of the trial court.

The standard of review for the granting of a motion for directed verdict is whether there is no conflict in the evidence on any material issue and the evidence with all reasonable deductions construed in favor of the non-moving party demands a certain verdict. OCGA § 9-11-50; *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (416 SE2d 807) (1992). Accordingly, viewed in the light most favorable to Morey and J & L Farms, the evidence at trial showed that Larry Morey, after farming on his own for several years, went to work for J & L Farms, a company owned by his wife and formed for the purpose of farming land in Mitchell County, Georgia. While Morey managed J & L Farms, he owned no assets and was not a director or officer of the corporation.

Brown Milling sold agricultural supplies and chemicals and Morey had done business with them for several years. After problems with disease to the Flo-Runner peanuts planted in the 1990 crop year, Morey decided to plant some of the land in Southern Runner peanuts, which are more disease-resistant than Flo-Runners. Mr. Brown had told Morey the Southern Runner peanut seed was germinating at 88 percent. Morey bought the Southern Runner seed from Brown Milling. Some of the Southern Runner seed Morey purchased was certified and some was uncertified. After planting, Morey realized the Southern Runner seed was not producing a good stand, and he complained to Brown and to Damascus Peanut Company, the supplier of the seed. Damascus offered to refund J & L Farms the cost of the Southern Runner seed. Morey declined the offer and said he would side plant with more seed and see what happened. After the peanut crop was harvested, Morey claimed that the Southern Runner peanuts did not produce as good a yield as the Flo-Runners.

J & L Farms operated by securing a loan each year from Southwest Georgia Farm Credit. Before the loan application could be approved, Farm Credit sent out debt verification forms to its applicants' creditors in order to determine their financial condition. Brown Milling received a debt verification for J & L Farms and returned it to Farm Credit, showing an account balance of over $87,000. This ac-

count consisted of charges for farming supplies other than just the peanut seed and associated items. Because of this account balance with Brown Milling, Farm Credit notified J & L Farms that it could not loan it the operating money for the next year.

Morey discussed the problem with Mr. Brown and Brown told Morey that he would notify Farm Credit the debt was satisfied if Morey would sign a promissory note for the amount due on account. Although Brown Milling charged 18 percent interest on overdue accounts, Brown told Morey he would only charge 10 percent interest on the note. Morey agreed and signed the note for J & L Farms and individually.

Brown notified Farm Credit that J & L Farms' account was satisfied and Farm Credit loaned J & L Farms operating money for the 1993 crop year. But, Morey decided not to farm that year and J & L Farms repaid the money to Farm Credit, rented out its farmland and discontinued farming operations. Neither Morey nor J & L Farms paid any money to Brown Milling, and in February 1994, Brown Milling filed suit on the promissory note.

1. Morey contends there was a jury issue as to his defense of failure of consideration for his obligating himself personally on the promissory note. Morey asserts that, at the time he signed the note, he owed no money to Brown Milling. Further, the note did not create any additional obligation, nor did it result in more credit extended to J & L Farms. But, J & L Farms received a reduced interest rate on the money owed to Brown Milling and also an indefinite extension of time before the amount became due. Furthermore, whether Morey signed the note as co-maker or accommodation party, there is no requirement that any additional benefit inure to him. Where two parties execute a note as co-makers, one of the co-makers is not allowed to plead failure of consideration because he did not receive the money named on the face of the note. If either of them received the money, both are bound. *Feltman v. Nat. Bank of Ga.*, 146 Ga. App. 434, 436 (246 SE2d 447) (1978). Likewise, an accommodation party cannot legally assert lack of consideration, since the value the accommodation party receives is the consideration for which the accommodation party bargained. *Scott v. Citizens Bank of Americus*, 188 Ga. App. 618, 619 (373 SE2d 633) (1988).

2. Morey also asserts there was a jury issue on his defense of duress. Morey claims Brown took unjust advantage of him and forced him to sign the note when he was in a state of economic distress. This does not, however, constitute legal duress. See *Tidwell v. Critz*, 248 Ga. 201, 203 (282 SE2d 104) (1981) (" 'duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will.' [Cit.]").

There is no evidence of duress apparent in the record. Indeed, the loan from Farm Credit was returned shortly after J & L Farms obtained it, Morey having decided to lease out the farmland instead of farming it himself.

3. Next, Morey contends the trial court erred in directing a verdict on his defense of equitable estoppel. This defense seems to be based on Brown Milling's representation to Farm Credit that J & L Farms had a zero balance with Brown Milling. Morey claims the consideration for the note was Brown's promise to make this false representation to Farm Credit. Therefore, the consideration was illegal and Brown Milling was equitably estopped from collecting on the note.

We find this argument to be without merit. For Morey and J & L Farms to assert the defense of equitable estoppel, they must show injury and lack of knowledge of the truth as to the facts in question. *Cobb County Rural Elec. Membership Corp. v. Bd. of Lights &c. of Marietta*, 211 Ga. 535 (2) (87 SE2d 80) (1955); *Ga. Real Estate Comm. v. Syfan*, 192 Ga. App. 3 (383 SE2d 605) (1989). Further, the party asserting the estoppel must be free from any fraud involved in the transaction. *Collins v. Grafton, Inc.*, 263 Ga. 441, 443 (435 SE2d 37) (1993). Accordingly, Morey and J & L Farms cannot assert the defense of equitable estoppel to their obligation on the note and the trial court did not err in directing a verdict for Brown Milling on this issue.

4. The trial court also found that there was no evidence to go to the jury as to the balance due on the note. Neither Morey nor J & L Farms disputed the authenticity of the note. Therefore, Brown Milling had a prima facie right to recover the face value due on the note. OCGA § 11-3-307 (2); *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 833 (395 SE2d 243) (1990). The burden then shifts to defendants to produce evidence showing a different amount owed and thereby creating a jury issue. *Jay Gleason Advertising Svc. v. Gleason*, 193 Ga. App. 445 (388 SE2d 43) (1989). But, at trial, defendants did not introduce evidence creating a dispute over the amount owed or authorizing a jury to come up with a different figure from the one testified to by Brown. Defendants' counsel questioned Brown as to certain of his figures and how he arrived at them, but submitted no evidence as to any other amount. On appeal, defendants still do not state why or by what amount the figure awarded was incorrect. In addition, Morey and J & L Farms do not contend that any of the amount due under the note was for Southern Runner seed, certified or uncertified. Brown's uncontroverted evidence was that the note was reduced over $19,000 for reimbursement of the cost of the seed. Accordingly, since defendants submitted no evidence as to an amount owed, the trial court did not err in directing a verdict on this issue.

5. Next, Morey and J & L Farms claim that the note should not

be enforced because it was a contract contrary to public policy. They contend that Brown's sale of uncertified seed constituted a violation of the Georgia Seed Law. This is not true and mischaracterizes the Code sections to which they cite. OCGA § 2-11-23 (a) (6) prohibits the *representation* of seed as certified unless the seed is produced in accordance with certain procedures. Further, we find no evidence in the record to create a jury issue as to whether the uncertified seed was not properly labeled. Indeed, Morey testified that he *assumed* the seed was certified. Further, Morey admitted that the invoices for seed sold to J & L Farms showed that each sale of certified seed was marked "CRT" and there was no such indication on the invoice for the uncertified seed. In addition, Morey testified that John Knowles, an officer of J & L Farms who helped in the farming, told him there was not the same tag on the uncertified Southern Runners as on the Flo-Runners. Morey told him to go ahead and plant them anyway. Accordingly, the trial court did not err in directing a verdict on Morey and J & L Farms' defense that the contract was void as against public policy.

6. Morey and J & L Farms also claim that the trial court erred in directing a verdict for Brown Milling on their claim for damages and lost profits due to breach of contract and implied warranties. They base this claim on Morey's contention that Brown told him that the Southern Runner seeds would germinate 88 percent.

The trial court correctly found that these claims must fail because Morey and J & L Farms are unable to show with any certainty either damages or lost profits. There is no dispute that J & L Farms was refunded the total purchase price for the Southern Runner seed, both certified and uncertified. Further, damages and lost profits due to any alleged deficiency in the seed were not shown with any reasonable certainty. Morey and J & L Farms contend their problems with the peanut crop stemmed from Brown Milling's selling them uncertified seed without informing them. Morey claims the poor germination was due to the uncertified seed; however, while he compares the Flo-Runner yield with the Southern Runner yield, we do not find any comparison of the certified Southern Runners with the uncertified Southern Runners. The Flo-Runners and Southern Runners are different types of seed which perform differently under the same conditions. Further, they were planted at different times, some on irrigated land and some on non-irrigated land.

It is well settled that there can be no recovery on a claim for loss of expected profits except where such loss can be shown with reasonable certainty. *Farmer's Mut. Exchange of Baxley v. Dixon,* 146 Ga. App. 663, 664 (247 SE2d 124) (1978). Further, in order to show damages or lost profits due to defective seed, Morey and J & L Farms must compare crops grown in the same soil, planted under identical

weather conditions, planted at the same time, and fertilized and culti-vated in the same manner. *Farmer's Mut.*, supra at 665. Morey and J & L Farms were unable to present this evidence at trial, and, conse-quently, the trial court did not err in directing a verdict on this issue.

Judgment affirmed. *McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1996.

*Langley & Lee, C. Richard Langley,* for appellants.
*Norman J. Crowe, Jr.,* for appellee.