A97A2508. HOVENDICK et al. v. PRESIDENTIAL FINANCIAL CORPORATION.
(497 SE2d 269)

ANDREWS, Chief Judge.

Danny Hovendick and Robert Spollen, officers of the now dissolved corporation of PlantSystems, Inc., appeal from the trial court's order granting summary judgment to Presidential Financial Corporation (Presidential) on its claim for money due under a promissory

note personally guaranteed by Hovendick and Spollen. For the reasons discussed below, we find no error and affirm the judgment of the trial court.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . ." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Accordingly, viewed in the light most favorable to Hovendick and Spollen (appellants), the record shows that on November 17, 1993, PlantSystems executed a promissory note (Note) in favor of Presidential which was personally guaranteed by appellants. The consideration for this Note was a loan to PlantSystems in the form of a revolving line of credit in an amount not to exceed $300,000.

On July 22, 1996, Presidential filed a complaint alleging PlantSystems was in default on the Note in the amount of $183,544.78 plus interest. Presidential filed a motion for summary judgment, and appellants responded claiming, inter alia, that they were fraudulently induced to sign the Note and the guaranties. The trial court granted Presidential's motion for summary judgment, and this appeal followed.

Appellants do not dispute the authenticity of the Note. They admit they signed the Note, received the money and defaulted. Therefore, Presidential had a prima facie right to recover the face value due on the Note. OCGA § 11-3-308 (b); *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 833 (395 SE2d 243) (1990) (decided under former Code section 11-3-307). Having established this right, Presidential was entitled to judgment unless appellants established a valid defense.

In their defense, appellants claim their attorney told them he was a board member of Milton Bank and could get them a line of credit with Milton. Because of this assurance of a line of credit, appellants contend they incurred debts in reliance on representations that their line of credit would be approved. However, when the line of credit was approved, it was through Presidential Financial Corporation, not Milton Bank and the terms were not as favorable as the ones appellants claim were promised to them. Appellants said they signed the Note and guaranties anyway because of the outstanding debts they had incurred and because Milton promised it would, at some time in the future, take over 50 percent of the funding of the line of credit, thereby reducing the cost to PlantSystems. Appellants stated they were given written notification that, as of December 15, 1993, Milton Bank would participate in funding 50 percent of the loan. This written notification is not in the record, nor is there any evidence in the record that Milton ever actually began

funding 50 percent of the Note. Appellants claim that in spite of this notification, there was no change or adjustment made in the fees or in the interest charged on the money advanced.

1. In their first enumeration of error, appellants claim Presidential breached its contract with them as follows: initially failed to honor requests for draws after execution of the agreements; added service charges to the principal instead of giving appellants the option of paying the charges when they accrued; failed to provide auditing and other agreed-upon services, and "cessation of funding after the parties reached an agreement in light of the IRS lien."

The only contract in the record is the loan agreement signed by appellants, which provided that Presidential "in its sole discretion may loan the Borrower an amount not to exceed $300,000. . . ." Therefore, Presidential was permitted to refuse to honor requests for draws. As to the other claims for breach of contract, appellants present no argument, no citation of authority, and also do not cite to any portion of the record that would support this claimed error. Moreover, after reading the terms of the Note and the Guaranty signed by appellants, we find no support for any of these contentions. Further, to the extent that appellants raise arguments based on other alleged agreements between the parties, there are no other agreements in the record, and "[i]t is a well established rule that in the absence of fraud, accident or mistake, parol evidence cannot be considered to alter or vary the terms of a promissory note." *Marchman Oil & Chem. Co. v. Southern Petroleum Trading Co.*, 167 Ga. App. 691 (307 SE2d 509) (1983).

2. Appellants also claim they were fraudulently induced to sign the Note and the guaranty. Appellants contend "[t]his possible fraud occurred in connection with negotiations in which there was a commitment that a third party would participate in the loan, and in connection with representations that the third party had in fact participated in the loan." Again, there is no evidence in the record to support this claim. Moreover, "a party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud." (Citations and punctuation omitted.) *Conerly v. First Nat. Bank &c.*, 209 Ga. App. 601, 603 (2) (434 SE2d 143) (1993). "One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign

by promises which contradict the express terms of the contract." *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (415 SE2d 193) (1992). This enumeration of error is without merit.

3. Next, appellants contend there was a jury issue on their defense of duress. They argue they were forced to sign the Note while under economic distress. This does not, however, constitute legal duress. See *Tidwell v. Critz*, 248 Ga. 201, 203 (1) (282 SE2d 104) (1981) ("Duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will"). There is no evidence of this type of duress in the record.

4. In enumerations 2 and 3, appellants contend Presidential did not establish the exact amount of principal owed. Appellants have not disputed specifically the amount Presidential claims is owed, nor have they submitted evidence as to what the correct amount should be.

Once Presidential introduced the Note and established a prima facie right to judgment on the Note, the burden shifted to Hovendick and Spollen to produce evidence showing a different amount owed and thereby creating a jury issue. *Morey v. Brown Milling Co.*, 220 Ga. App. 256, 258 (469 SE2d 387) (1996); *Jay Gleason Advertising Svc. v. Gleason*, 193 Ga. App. 445 (388 SE2d 43) (1989) (decided under former Code section 11-3-307). Therefore, because appellants have introduced no evidence showing that the amount claimed by Presidential is incorrect and no evidence as to any other amount, there is no merit to these enumerations of error.

5. Next, appellants claim the interest charged on the Note was usurious. The argument in support of this enumeration appears to be based on appellants' contention that Presidential was providing only 50 percent of the funding under the Note after a certain time, with Milton Bank providing the other 50 percent. However, the only evidence before us is the Note between Presidential and appellants. There is nothing in the record showing that Milton Bank began funding any portion of the Note. As previously discussed, contentions regarding statements or misrepresentations by Milton Bank[1] cannot be used to vary the terms of the unambiguous promissory note and do not establish a valid defense to Presidential's prima facie right to recover on the Note. *Campbell*, supra at 640; *Marchman Oil*, supra at 691.

6. Appellants next claim the trial court erred in denying them

---

[1] No individual or officer is ever identified as having made these statements on behalf of the bank.

leave to assert a counterclaim. Pursuant to OCGA § 9-11-13 (f), "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up a counterclaim by amendment. Such a showing is mandatory." (Punctuation and emphasis omitted.) *Conerly*, supra at 603 (3), citing *Adderholt v. Adderholt*, 240 Ga. 626, 628 (1) (242 SE2d 11) (1978).

Here, Presidential filed its Complaint on July 22, 1996, and appellants answered on August 28, 1996. Appellants did not move to file a compulsory counterclaim until February 10, 1997. Moreover, appellants did not make the required showing mandated in *Conerly*, but instead, merely claimed they were seeking leave to file a third-party complaint against Milton Bank and "the interests of justice counsel in favor of allowing [it]." Further, whether to allow such a filing even after the requisite showing is made is within the discretion of the trial court and will not be disturbed absent abuse. *Conerly*, supra at 604. We find no abuse.

7. In their last enumeration of error, appellants claim the trial court erred in denying them leave to file a third-party complaint against Milton Bank. OCGA § 9-11-14 provides that a third-party plaintiff need not obtain leave to file a third-party complaint if he does so within ten days after he serves the original answer. However, after the ten days have expired, he must obtain permission from the trial court in order to file a third-party complaint. OCGA § 9-11-14. "The decision whether to grant or deny a motion for leave to implead a third-party defendant is one committed to the sound discretion of the trial court, and the timeliness of the motion is a factor governing the exercise of such discretion. . . . (W)here the motion for interpleader is not promptly made and the movant offers no reasonable excuse for the delay, the motion may be properly denied." *Cherokee Nat. &c. Ins. Co. v. Coastal Bank of Ga.*, 239 Ga. 800, 802 (1) (238 SE2d 866) (1977); *Jenkins v. Chambers*, 127 Ga. App. 200, 202-203 (193 SE2d 222) (1972).

Here, appellants filed their answer on August 28, 1996. Presidential filed its motion for summary judgment on January 6, 1997. Appellants moved for leave to file a third-party complaint on February 10, 1997. Therefore, the motion was not promptly made, appellants having waited almost six months since they filed their answer and one month after Presidential filed its motion for summary judgment. Moreover, the motion failed to give a reasonable excuse for the delay. Accordingly, the trial court did not abuse its discretion in denying leave to file the third-party complaint.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

Decided February 10, 1998.

*Charles R. Floyd, Jr., Deborah M. Floyd,* for appellants.
*Sutherland, Asbill & Brennan, Steven L. Polk,* for appellee.