## A99A0645. DIXON DAIRY FARMS, INC. v. CONAGRA FEED COMPANY.

(519 SE2d 729)

BARNES, Judge.

Conagra Feed Company sued Dixon Dairy Farms for $123,110.61 on an open account, plus contractual attorney fees and interest. Dixon Dairy answered that it did not owe on the account because Conagra's feed was not fit for its intended purpose, and counterclaimed for lost profits. The trial court granted summary judgment to Conagra on both its suit on account and Dixon Dairy's counterclaim. Dixon Dairy appeals the summary judgment grant. We affirm the grant of summary judgment to Conagra on Dixon Dairy's claim for lost profits, but reverse the grant to Conagra on its claim for money due on an open account.

On appeal, Dixon Dairy raises two enumerations of error, arguing that questions of fact remain as to whether the feed was fit for its ordinary purpose and whether the farm lost profits due to Conagra's alleged breach of the implied warranty of merchantability. Dixon Dairy admitted in its answer that it had an open account with Conagra, that Conagra shipped feed during the time period alleged, and that the account showed an unpaid balance; thus we need only address Dixon Dairy's defenses and counterclaim.

In reviewing the grant or denial of summary judgment, this court conducts a de novo review of the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996). As the movant for summary judgment, Conagra had the burden to show there was no genuine issue of material fact for trial and that the undisputed facts, viewed in the light most favorable to Dixon Dairy, warranted judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Assuming Conagra made that showing, the burden then shifted to Dixon Dairy to show evidence sufficient to create an issue of fact on its affirmative defense.

> Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the same burden of proof it would have at trial, the burden of production of evidence shifts to the plaintiff, who will survive summary judgment in the same fashion that she would survive a motion for directed verdict at trial, i.e., by presenting any evidence which creates a jury issue on an element of the affirmative defense. However, if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law.

(Citations and emphasis omitted.) *Garrett v. NationsBank, N.A.*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997). If Dixon Dairy met this burden, Conagra, as the moving party not bearing the burden on the affirmative defense, could meet its burden by pointing out that the evidence did not support the affirmative defense. *Bell v. Smith*, 227 Ga. App. 17, 18-19 (488 SE2d 91) (1997).

Pleadings and depositions establish that Conagra began delivering feed to Dixon Dairy on November 10, 1995, and stopped on January 20, 1996. A veterinarian who treated Dixon Dairy's cows regularly testified that he examined the herd in December 1995 and January 1996 at the owner's request. He testified the cows looked tired, their coats were dull, and their weight was down, as if they were not receiving sufficient nutrition. He examined the dairy's records with the farm manager, and noticed that the interval between breeding times had lengthened, which reduced the amount of milk the animal produced. He attributed their poor condition to inadequate nutrition because that was the only part of their routine that had changed, and testing revealed no diseases or infections. He said the feed itself did not look fresh and had some kind of contaminate that looked like rat parts. Finally, he testified that a month after switching their feed, the cows' milk production rose; within three months their coats looked good and they were alert again.

Dixon Dairy's farm manager testified that the herd became sluggish 30 to 45 days after it began eating Conagra feed. The cows ate more feed but milk production remained flat, even though it generally rises during cooler months. He said he saw contaminants in the feed, such as rats, a hard hat, and a glove. Milk production rose after the dairy resumed using Purina feed, and the herd became healthy again.

We note the record contains references to various tests of the feed but no proper evidence of the test results. At most, it contains hearsay about what a test report indicates to a witness. Significantly absent from the record is any testimony from the person who conducted the tests or testimony regarding the sample and testing procedures. Without such evidence, the test results are hearsay. Furthermore, even if properly admitted, the evidence does not indicate the appropriate significance to be placed on the percentages contained in the analysis.

1. Dixon Dairy asserted that Conagra's feed was not fit for its ordinary purpose, feeding dairy cattle. OCGA § 11-2-314 provides that, unless excluded, a contract of sale implies a warranty of merchantability of the goods. OCGA § 11-2-314 (2) defines merchantable as follows:

Goods to be merchantable must be at least such as: (a) Pass

without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any.

Evidence that hog feed contained toxins, that hogs tested positive for toxins after eating the feed, and that hogs were healthy before and unhealthy after eating feed was sufficient to sustain a jury verdict for the farmer in a suit against a feed company alleging breach of implied and express warranties and negligence. *Tillman & Deal Farm Supply v. Deal*, 146 Ga. App. 232, 233 (1) (246 SE2d 138) (1978). However, testimony that crop production was lower the year a farmer applied a certain fertilizer was insufficient to withstand a directed verdict on a suit on open account, as the farmer failed to show the manufacturer's product caused the decreased production. *Lorick v. Na-Churs Plant Food*, 150 Ga. App. 209-210 (2) (257 SE2d 332) (1979).

Cases alleging that seed providers breached the implied warranty of fitness also illustrate the amount and type of evidence sufficient to create a jury question on whether goods were fit for their ordinary purpose. For example, evidence from county extension agents that a peanut crop did not germinate properly and had abnormal roots was sufficient to affirm a trial court's decision to send an implied warranty of merchantability claim to the jury in *Gold Kist v. Williams*, 174 Ga. App. 849 (332 SE2d 22) (1985). Deposition testimony claiming seed corn contained sterile male corn, which will not produce a crop, was sufficient to withstand a summary judgment on an implied warranty of merchantability claim in *Farmers Mut. Exchange of Baxley v. Dixon*, 146 Ga. App. 663, 664 (4) (247 SE2d 124) (1978). "Where there is evidence of a defect in the goods which renders them unfit for the ordinary purposes for which such goods are used, the vendor may be held liable under the UCC." (Citation omitted.) Id. at 664.

In granting summary judgment to Conagra, the trial court found that Dixon Dairy

presented no evidence that the feed supplied by [Conagra] did not conform to the specifications represented on its packaging, or that its nutritional content fell below that man-

dated by the Georgia Department of Agriculture. . . . In the absence of verifiable, objective evidence a feed's nutritional content was below what was represented or what is legally mandated, a claim which can be sustained only by proof the feed was defective cannot be pursued.

The evidence outlined above from the veterinarian and farm manager raises an issue of fact regarding Dixon Dairy's defense to Conagra's suit on account, and the trial judge erred in awarding summary judgment to Conagra on the account.

2. However, Dixon Dairy presented evidence insufficient to withstand summary judgment on its claim for lost profits. "It is well settled that there can be no recovery on a claim for loss of expected profits except where such loss can be shown with reasonable certainty. *Farmers Mut. Exchange of Baxley v. Dixon*, 146 Ga. App. 663, 664 (247 SE2d 124) (1978)." *Morey v. Brown Milling Co.*, 220 Ga. App. 256, 259 (6) (469 SE2d 387) (1996). Our decision in *Morey* outlines the evidence necessary to show lost profits with reasonable certainty in an analogous situation. The plaintiff in *Morey* sought to recover profits lost when a batch of peanut seed failed to yield a good crop. We held that, in order to show lost profits due to defective seed, Morey had to compare crops grown in the same soil, planted at the same time under identical weather conditions, and fertilized and cultivated in the same manner. Id. at 259-260.

We have further held that, to recover lost profits, the farmer "must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." *Kitchens v. Lowe*, 139 Ga. App. 526, 531 (3) (228 SE2d 923) (1976).

To show lost profits, therefore, Dixon Dairy would have to compare the output of cows kept in the same location and cared for in the same manner, as well as introduce evidence of the expenses it would have incurred. It did not do so. The evidence showing lost profits consisted of the farm manager's deposition testimony and his conclusory affidavit submitted in response to Conagra's motion for summary judgment.

In his deposition, the manager attributed the largest portion of loss to "the milk production, the cows peaking lower than they would, what I feel like they would have normally peaked." Using figures from "either the University of Pennsylvania or Cornell or the Herds Dairyman, I can't remember which one," he figured out how much a cow's milk production would drop when the cows' production peaked at a lower level than anticipated. He estimated that the dairy lost $215,000 worth of milk. He further estimated that lower reproduction rates cost the farm "around $35,000," "based on a formula in a

public dairy manual." His affidavit similarly failed to compare cows kept in the same location and cared for in the same manner, and did not include any evidence regarding the formulas by which he calculated the lost milk.

This evidence is insufficient to establish lost profits. *Morey v. Brown Milling Co.*, supra, 220 Ga. App. at 259. The trial court did not err in granting summary judgment to Conagra on Dixon Dairy's counterclaim for lost profits.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 23, 1999 —
RECONSIDERATION DENIED JULY 21, 1999.

*Howard, Carswell & Bennett, Kenneth R. Carswell*, for appellant.

*Chambless, Higdon & Carson, Brown W. Dennis, Jr., Marc T. Treadwell*, for appellee.