A09A0635. SUNSTATE INDUSTRIES, INC. v. THE VP GROUP, INC.
(679 SE2d 824)

MIKELL, Judge.

Sunstate Industries, Inc. d/b/a Sunstate Fabricators ("Sunstate"), filed a complaint for suit on account, quantum meruit, and bad faith against the VP Group, Inc. ("VPG"), seeking to recover

---

money due for fire protection materials delivered to VPG, plus interest and litigation expenses. VPG filed an answer and a counterclaim, asserting breach of contract, negligence, fraud, tortious interference with contract, and stubborn litigiousness. The case proceeded to a bench trial. The trial court returned a "verdict form" and subsequently entered a final judgment, awarding $110,000 to Sunstate on its complaint and "$190,000, plus $18,845" to VPG on its counterclaim. The verdict and judgment state that the court did not award attorney fees, but the award of $18,845 is not explained. The court entered final judgment in favor of VPG for $98,845. Sunstate appeals, asserting, inter alia, that the trial court erred by awarding consequential damages to VPG. We agree. For the reasons set forth below, we reverse the judgment in its entirety and remand for a new trial.

1. VPG has filed a motion to dismiss this appeal, arguing that the "verdict form" entered by the court on April 4, 2008, constituted an appealable final judgment, so that Sunstate's notice of appeal, filed on August 8, 2008, was untimely. We disagree. The Appellate Practice Act provides, in relevant part, that appeals may be taken from "[a]ll final *judgments*, that is to say, where the case is no longer pending in the court below."[1] The Appellate Practice Act must "be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case . . . , except as may be specifically referred to in this article."[2] The trial court specifically entered final judgment on July 9, 2008, and Sunstate filed its notice of appeal within 30 days of that date. That filing was timely and sufficient to confer jurisdiction on this Court. Had the trial court intended for its "verdict form" to constitute a "judgment," the court would have used that nomenclature. The cases upon which VPG relies, *Spring-U Bonding Co. v. State of Ga.*,[3] and *Caswell v. Caswell*,[4] are inapposite because the orders entered in those cases made it clear that the parties were left with no further recourse in the trial court. Therefore, VPG's motion to dismiss this appeal is denied.

2. In several enumerations of error, Sunstate challenges the award to VPG on its counterclaim. On appeal from a judgment entered in a bench trial, the trial court's findings will not be disturbed if there is any evidence to support them, and the evidence is viewed in the light most favorable to support the trial court's

---

[1] (Emphasis supplied.) OCGA § 5-6-34 (a) (1). See also *GMC Group v. Harsco Corp.*, 293 Ga. App. 707-708 (667 SE2d 916) (2008).

[2] OCGA § 5-6-30.

[3] 200 Ga. App. 533 (408 SE2d 831) (1991).

[4] 157 Ga. App. 710 (278 SE2d 452) (1981).

verdict.[5] However, "we apply a de novo standard of review to any questions of law decided by the trial court."[6]

Properly viewed, the evidence adduced at trial shows that Beers Construction Company ("Beers"), the general contractor for the construction of the Ritz-Carlton at Reynolds Plantation, awarded VPG the subcontract to provide and install the fire sprinkler system at the resort. VPG's president, Mark Viness, a mechanical engineer who was qualified as an expert in fire protection systems, testified that the contract required VPG to "lay out" a system that complied with the relevant code of the National Fire Protection Association, NFPA 13. Viness testified that VPG hired Sunstate to fabricate the pipe for the sprinkler system and that VPG had been purchasing code-compliant pipe from Sunstate for ten to twelve years. VPG paid Sunstate $116,723.83 for the pipe installed on the Ritz-Carlton project. Viness testified that ultimately, Beers terminated VPG from the project and filed suit against it. VPG counterclaimed for wrongful termination. Beers and VPG mediated their dispute, and during mediation on January 28, 2002, they entered into a handwritten settlement agreement in which Beers agreed to pay VPG $190,000. The agreement stated that it was subject to the approval of Jeff Cross, president of Beers's corporate commercial group. According to Viness, Beers reneged upon the agreement because it discovered that the pipe was defective. On April 30, 2002, VPG and Beers entered into a settlement agreement for mutual dismissals but no money.

Cross testified that Beers terminated VPG's contract by letter dated August 30, 2001, citing VPG's inability to meet the project's schedule and insufficient manpower. Cross admitted that a settlement was reached during mediation, during which Beers agreed to pay VPG $190,000. Cross was not asked why Beers refused to approve the mediated settlement. However, he testified that Beers was not aware of the defective pipe until after mediation. In this regard, Cross testified that certain piping was not code compliant because there were one-and-one-half inch welded outlets on one-and-one-fourth inch holes.

Jon Howell, Sunstate's president, testified that VPG had not paid for the pipe it ordered after being terminated from the Ritz-Carlton project and that the outstanding principal balance on VPG's account was $110,468.23. According to Howell, VPG did not notify him of problems with the project until after Beers terminated VPG's subcontract, and he attended the mediation to provide support for

---

[5] See *Cox Interior v. Bayland Properties*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008).

[6] (Citation omitted.) *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

VPG. Howell admitted that NFPA 13 required Sunstate to have a written quality assurance plan essentially certifying compliance with proper standards and that Sunstate could not produce any such plan.

At the close of the evidence, Sunstate moved for a directed verdict on its complaint and on VPG's counterclaim. The motions were denied. Thereafter, Sunstate filed a motion for judgment notwithstanding the verdict (j.n.o.v.), arguing, inter alia, that the award on the counterclaim was unrelated to any proper measure of damages. The trial court did not enter an order denying the motion; instead, the court entered final judgment for $98,845 to VPG, based on the award of $110,000 to Sunstate and "$190,000, plus $18,845" to VPG. The court did not enter findings of fact or conclusions of law. Although the judgment states that no attorney fees are awarded, the only reference in the trial transcript to the sum of $18,845 is during VPG's closing argument, when counsel argued that the sum should be awarded to VPG as attorney fees for dealing with "the seller's defective product."

In its fourth enumeration of error, Sunstate asserts that the $190,000 award in favor of VPG cannot be sustained because it represents the mediation settlement, which is not recoverable as consequential damages under the Uniform Commercial Code ("UCC").[7] VPG asserts that the trial court properly awarded that sum as consequential damages under OCGA § 11-2-715 (2) (a) because the lost settlement directly resulted from Sunstate's breach of warranty.[8] We agree with Sunstate.

OCGA § 11-2-714 provides, in pertinent part:

. . .

> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
>
> (3) In a proper case any incidental and consequential damages under Code Section 11-2-715 may also be recovered.

[7] OCGA § 11-1-101 et seq.

[8] See *Dixon Dairy Farms v. Conagra Feed Co.*, 239 Ga. App. 233, 235 (1) (519 SE2d 729) (1999) ("[w]here there is evidence of a defect in the goods which renders them unfit for the ordinary purposes for which such goods are used, the vendor may be held liable under the UCC") (citation and punctuation omitted). See also OCGA § 11-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose").

With regard to consequential damages, OCGA § 11-2-715 states:

. . .

(2) Consequential damages resulting from the seller's breach include:

(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) Injury to person or property proximately resulting from any breach of warranty.

Construing these provisions, this Court has observed that, in order to recover consequential damages, a buyer must prove that the failure of the seller to deliver goods as provided in the contract resulted in a loss "directly attributable to the breach."[9] Even in breach of contract actions not governed by the UCC, "[r]emote or consequential damages are not recoverable unless they can be traced *solely* to the breach of the contract."[10]

In the case at bar, the only evidence offered by VPG in support of these consequential damages is testimony that Beers agreed to pay VPG $190,000 to settle the dispute stemming from the Ritz-Carlton project and that Beers reneged on that agreement when it learned about the defective pipe. But VPG failed to present evidence demonstrating that the $190,000 award bears any direct relationship to the breach of warranty. VPG offered no specific evidence as to the basis of the proposed settlement with Beers, and the handwritten settlement document only references certain claims against the "owner." Nor does VPG show a causal connection between the $190,000 and Sunstate's breach of warranty. There is evidence that VPG paid Sunstate $116,723.83 for the pipe installed at the project and that some of the pipe was defective. But there is no evidence relating the amount paid for the defective pipe to the mediation settlement. Thus, VPG failed to prove that Beers's failure to pay the $190,000 settlement was directly attributable to the breach of warranty.[11] Consequently, the verdict cannot be sustained.

3. In view of our ruling in Division 2, we reverse the judgment of

---

[9] *B & D Carpet Finishing Co. v. Gunny Corp.*, 158 Ga. App. 621, 622 (281 SE2d 354) (1981) (appellee's failure to deliver carpet backing as required by contract resulted in production loss directly attributable to breach of that contract because appellant was unable to obtain either sufficient cover or a reasonable price for available substitute). See also *Bldg. Materials Wholesale v. Triad Drywall, LLC*, 287 Ga. App. 772, 775-777 (2) (653 SE2d 115) (2007) (evidence was insufficient as matter of law to authorize recovery of lost profits as consequential damages).

[10] (Emphasis supplied.) OCGA § 13-6-8. See *Comtrol, Inc. v. H-K Corp.*, 134 Ga. App. 349, 352 (2) (214 SE2d 588) (1975) (whole court).

[11] *Gunny Corp.*, supra.

the trial court. Because Sunstate appeals from the final judgment, and has not enumerated as error the denial of its motion for a directed verdict, a new trial is the appropriate remedy.[12] We believe that a new trial is appropriate in any event because the evidence as to damages was both complicated and intertwined.[13]

*Judgment reversed and case remanded with direction. Johnson, P. J., and Ellington, J., concur.*

## DECIDED JUNE 9, 2009.

*Douglas H. Tozzi*, for appellant.
*Kevin A. Adamson*, for appellee.

---

[12] See *Bldg. Materials Wholesale*, supra at 777 (2), n. 14. Compare *Waters v. Rentz*, 108 Ga. App. 711, 712 (134 SE2d 527) (1963) (following bench trial, defendant enumerated error upon denial of motions for directed verdict and for j.n.o.v.; judgment reversed with direction that it be entered in accordance with motion for j.n.o.v.).

[13] Even if Sunstate had enumerated as error the denial of its motion for a directed verdict, we would order that a new trial be had to meet the ends of justice under the facts of this case. See OCGA § 9-11-50 (e).