A03A2250. WILLIAMSON et al. v. STRICKLAND & SMITH, INC. et al.
(587 SE2d 876)

ELDRIDGE, Judge.

Strickland & Smith, Inc. ("S & S") and Top Quality Produce, Inc. ("Top Quality") brought separate suits against Billy Williamson, Williamson Produce, Inc., and Classic Vidalia, Inc. (collectively "Williamson") for damages which arose from (1) an alleged joint venture to grow onions, and (2) the packing, grading, and storage of onions thereafter. Billy Williamson and Williamson Produce, Inc. brought a third-party action against Bobby Smith, a principal of S & S and Top Quality to recover the balance owed on a note and to prevent Smith from defaulting on a lease agreement for farmland. All cases were consolidated for trial and were heard without a jury by the trial court. Williamson appeals from the denial of the motion for new trial. For the reasons that follow, we affirm in part, reverse in part, and remand with direction.

"There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citations and punctuation omitted.) *Nationwide &c. Ins. Co. v. Wiley*, 220 Ga. App. 442, 443 (2) (469 SE2d 302) (1996). Viewed in this light, the evidence shows that during the 1997-1998 growing season, Williamson and Top Quality entered into a joint venture to grow onions together on a 45-acre tract of land in Tattnall County. Top Quality, in addition to providing the land, was to provide all the labor, including the planting and harvesting of the onions. Williamson was to provide the money for expenses until the end of the season, at which time the parties agreed to settle expenses and share equally in the profits or losses. The joint venture produced 10,742.25 harvested field bags of onions. All of the onions, with the exception of 2,002.25 field bags, were sent to S & S for sorting, grading, and packing. The remaining 2,002.25 field bags were sent to Williamson's storage facility. The 2,002.25 field bags of onions were worth $17,265.64. However, Williamson only reported sales of $3,581.95. The trial court awarded Top Quality the sum of $13,683.69

plus interest for the difference between the market value and the reported sales price of the onions.

Williamson was also responsible for selling the 8,740 field bags of onions sorted, graded, and packed at the S & S storage facility. The evidence shows that Williamson picked up all 8,740 field bags for sale. Top Quality claimed that Williamson failed to account for the sale of 1,323 bushels of jumbo onions and 672 bushels of medium onions. The trial court awarded Top Quality $26,450.65 plus interest for the fair market value of the onions for which Williamson did not account. Top Quality's remaining claims for damages for breach of fiduciary duty and the difference between the fair market value and the selling price of the remainder of the onions were denied by the trial court for insufficient evidence.

S & S, who was not a party to the joint venture, brought suit to recover for damages which arose out of the sorting, packing, and storage of onions at its facility. Of the four counts asserted by S & S, the trial court granted S & S relief on Count 2 alone. Count 2 was based on S & S agreeing to store 17,000 bushels of onions in its cold storage facility that Williamson individually had purchased from James Lillard ("Lillard onions"). Williamson called Smith at 4:00 p.m. on a Sunday afternoon requesting four loads of jumbo onions by 8:00 a.m. the next morning. Williamson's onions were not located in the front of the cooler, and Smith advised Williamson he could not move the onions in front of Williamson's onions by 8:00 a.m. the next morning. The onions most easily accessible were onions S & S had purchased from James McLain ("McLain onions"). In an effort to meet Williamson's orders for Monday morning, Smith and Williamson agreed that Smith would "swap" him four truck loads of McLain onions for an equal number of Williamson's Lillard onions which were farther back in the storage facility.

Williamson took possession of the McLain onions. At the time Williamson took possession of the McLain onions, the Lillard onions were thought to be of equal quality. Smith testified that S & S had a purchaser located in Asheville, North Carolina, for the Lillard onions for $20 per 40-pound box, totaling $80,450. However, when the Lillard onions were taken out of storage, a sampling showed the onions to be diseased with center rot. Only about 40 percent were marketable. S & S was unable to fulfill its contract with the Asheville purchaser. Smith received only $2,000 for the Lillard onions. The trial court awarded S & S $78,450 plus interest for the loss it incurred.[1]
*Held*:

---

[1] Additionally, the trial court awarded defendants $12,500 on their third-party action/counterclaim against Smith for the balance due on the note between the parties. However, this award has not been enumerated as error in this appeal.

1. Appellants argue that the evidence was insufficient to support the judgment in favor of Top Quality. Appellants assert (1) that the trial court failed to consider that Top Quality was entitled to only one-half of the damages as the profits and losses were to be split equally between the parties, and (2) that the trial court failed to take into account the expenses for the cost of the sale.

> A trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence. OCGA § 5-5-21. However, when a trial court denies such a motion, the appellate court does not have the discretion to grant a new trial on that ground. "(W)e can only review the evidence to determine if there is any evidence to support the verdict. (Cit.)" *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978).

*Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001). "The appellate courts 'can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.' [Cit.]" Id. "The trial court's denial of a motion for new trial on evidentiary grounds will be reversed on appeal only if there is *no* evidence to support the verdict." (Citation and punctuation omitted; emphasis in original.) *Mansfield v. Pizza Hut of America*, 202 Ga. App. 601, 602 (415 SE2d 51) (1992); *Greene v. Bowers*, 229 Ga. App. 324, 325 (1) (493 SE2d 709) (1997).

(a) The evidence showed that under the terms of the joint venture Top Quality was to provide the land and the labor, and Williamson was to provide the money to fund the joint venture. After deducting all expenses, the parties were to split the profits or losses. Top Quality produced evidence through the testimony of Smith that the joint venture produced a total of 10,742.25 harvested field bags of onions. Eight thousand seven hundred forty field bags were graded by S & S and stored in S & S's facility and 2,002.25 field bags were graded by Williamson and stored in Williamson's facility. Further, Smith testified that the 2,002.25 field bags stored in Williamson's facility had a fair market value of $17,265.64 and that Williamson only reported sales of $3,581.95, leaving a $13,683.69 loss. Additionally, Smith testified that Williamson was responsible for selling the joint venture's 8,740 field bags that were stored in S & S's storage facility and that, on the final accounting, Williamson failed to account for the sale of 1,323 bushels of jumbo onions and 672 bushels of medium onions, which had a fair market value of $26,450.65. Smith based his testimony on established invoices, sales receipts, pack out rates, and the USDA market report for the area which showed the average price of comparable jumbo and medium onions

during the season, all of which were introduced into evidence. Based on the figures established by Smith's testimony and the documents admitted into evidence, the trial court awarded Top Quality the sum of $35,682.77 which represented the total fair market value of the onions less the money already received by the parties on Williamson's reported sales. Thus, there was sufficient evidence to support the trial court's finding that $35,682.77 was the total amount of damages due the joint venture.

However, there was *no* evidence that Top Quality was entitled to more than one-half of the profits under the joint venture agreement. Therefore, that portion of the trial court's judgment awarding Top Quality the entire amount of the previously unaccounted-for profits must be set aside, and the trial court is directed to enter judgment for one-half of the $35,682.77. See *Scott v. Thompson*, 193 Ga. App. 487, 488 (2) (388 SE2d 371) (1989) (the entire judgment need not be set aside where it can be determined how much is erroneous).

(b) However, contrary to Williamson's assertions that the costs of sale, including packaging, were not included in the sale, there *was* evidence that the total expenses of the joint venture were factored into the calculation of damages awarded Top Quality. The accounting prepared by Williamson and provided to Top Quality included a deduction for "onion growing and harvesting expenses." While the parties may have disagreed on whether Williamson was also entitled to deduct interest he alleged was due on the money he advanced, the trial court was entitled to conclude that Williamson was not entitled to interest under the joint venture agreement as contradictions in evidence and witness credibility are for the factfinder to resolve. *Plemons v. Weaver*, 243 Ga. App. 464, 467 (3) (533 SE2d 747) (2000). There is no merit in this argument.

2. Williamson further contends that the trial court's award of $78,450 to S & S, based on the swap of onions is based upon speculation and conjecture, as S & S's expenses were not taken into account when arriving at the damages. We agree.

To recover lost profits, S & S " 'must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery.' *Kitchens v. Lowe*, 139 Ga. App. 526, 531 (3) (228 SE2d 923) (1976)." *Dixon Dairy Farms v. Conagra Feed Co.*, 239 Ga. App. 233, 236 (2) (519 SE2d 729) (1999). In this case, both Smith and Williamson testified that they agreed to swap an equal number of Williamson's Lillard onions for S & S's McLain onions. Smith testified that Williamson agreed either to pay him for the McLain onions or to swap an equal amount of the Lillard onions for the McLain onions. Smith further testified that Williamson promised him that S & S would not lose money on a swap. Based on this agreement, William-

son took possession of 3,218 bushels of S & S's McLain onions in exchange for an equal amount of Williamson's Lillard onions. At the time of the agreement, both Smith and Williamson thought the Lillard onions were of a quality that was equal to the McLain onions. When the Lillard onions were removed from storage it was discovered for the first time that they had center rot.

Further, there was evidence that Tom Laster had agreed to buy the entire 3,218 bushels of S & S's McLain onions at $20 per 40-pound box. When S & S discovered that the Lillard onions had center rot, S & S was unable to substitute the Lillard onions for the McLain onions it had given Williamson and could not fulfill its order to Laster. There was evidence that the 3,218 bushels of McLain onions would divide into 4,022.50 40-pound boxes which would have given S & S a gross profit of $80,450. Because of the center rot, S & S received only $2,000 for the Lillard onions. The trial court deducted the $2,000 from the $80,450 and awarded S & S $78,450.

However, the evidence shows that the price of $20 per 40-pound carton was based on the onions being delivered to Asheville, North Carolina, packaged in 40-pound boxes. There was no evidence in the record to indicate what expenses S & S would have incurred had they been able to follow through with Laster's order. At a minimum S & S would have had the expenses of the boxes in which the onions were to be packed, the labor to assemble and pack the boxes, and the cost of shipping or delivering the boxes of onions to Asheville, North Carolina. S & S having failed to put up any evidence of its anticipated expenses, its proof of lost profits was insufficient as a matter of law, and the judgment in favor of S & S must be set aside.

3. Based on our holding in Division 2, the remainder of Williamson's enumerations are moot.

*Judgment affirmed in part and reversed in part and case remanded with direction. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 26, 2003.

*Malcolm F. Bryant, Jr.*, for appellants.
*Glen A. Cheney, LuAnn C. Davis*, for appellees.