A05A1546. ALDWORTH COMPANY, INC. v. ENGLAND et al.
A05A1547. KEYSTONE FREIGHT CORPORATION v. ENGLAND et al.

(622 SE2d 367)

MILLER, Judge.

These consolidated cases arise out of a road rage incident. A truck driver supplied to Keystone Freight Corporation (Keystone) by Aldworth Company, Inc. (Aldworth) pulled in front of a car driven by Sandra England and her husband, and proceeded to pursue the Englands into a gas station parking lot, where he assaulted Mrs. England. The Englands brought suit for the injuries they suffered in the altercation. Keystone answered the Englands' complaint, but Aldworth did not, and a default judgment was later entered against Aldworth. At trial, a jury found that the driver had been acting within the scope of his employment with Keystone when he assaulted Mrs. England. The jury then awarded the plaintiffs $750,000 in compensatory damages against Aldworth and Keystone jointly and severally, as well as $1 million in punitive damages against each of the companies. In this appeal, Aldworth contends that the trial court improperly denied its motions to set aside the default judgment, for judgment notwithstanding the verdict (j.n.o.v.), and for new trial. Keystone likewise contends that its motions for j.n.o.v. and new trial were improperly denied. We affirm in both cases.

Viewed in the light most favorable to the jury's verdict, the evidence shows that Sandra and Andrew England were driving on Highway 34 in Newnan when a Keystone truck operated by Ricky Barron attempted to merge into their lane. After an exchange of angry hand gestures, Barron again attempted to merge into the Englands' lane, forcing them to escape by accelerating and scraping their wheels along the curb. Barron then followed the Englands into a gas station, where they were already pumping gas into their car. Leaving his engine running, and spouting curses, Barron jumped out of his truck, approached Sandra England, and punched her in the face.

On August 13, 2001, the Englands brought a personal injury action against Barron, Aldworth, Keystone, and Reliance National Indemnity Company (Reliance). Aldworth and Keystone were served the same day. At the time of the incident, Reliance insured both Aldworth and Keystone. Although Keystone answered the complaint, Barron and Aldworth did not, and went into default as a result on or about September 12, 2001. A few weeks later, and on petition from the Pennsylvania Commissioner of Insurance, a Pennsylvania court issued an order of liquidation as to Reliance. Keystone then tendered the defense of the Englands' action to the insurers' insolvency pool

known as the New Jersey Property-Liability Insurance Guaranty Association (NJ-PLIGA), which accepted the case as its responsibility under New Jersey law.

In August 2002, the Englands moved for entry of default judgment against Barron and Aldworth.[1] Aldworth then appeared in the case and opposed the motion. See OCGA § 9-11-55 (b). The trial court then entered a default judgment against Aldworth and placed the case on the trial calendar.

A jury trial was later held to determine Keystone's liability and to determine damages against all three defendants. At the conclusion of their case, the Englands moved for a directed verdict on the questions whether Barron was an employee of Keystone and whether he had acted within the scope of his employment with Keystone. Keystone opposed the Englands' motion, arguing that Barron's actions amounted to a deviation from his employment that could not be imputed to the company. The trial court granted the Englands' motion in part, finding that Barron was indeed an employee of Keystone at the time of the incident, but reserved judgment until the close of evidence on the question whether Barron was acting within the scope of his employment. Keystone then moved for a directed verdict on the question whether it had negligently hired or retained Barron. The trial court denied this motion.

At the close of evidence, the Englands renewed their motion for directed verdict as to Barron acting within the scope of his employment. The trial court denied the Englands' motion, but allowed both this issue and the question of negligent hiring to go to the jury — the latter on the ground that Barron had a suspended license at the time he was hired. Keystone did not move for a directed verdict on this or any other question at the close of evidence. The jury found that Barron was indeed acting within the scope of his employment with Keystone at the time of the altercation with Mrs. England. The jury also found Aldworth and Keystone jointly and severally liable for $750,000 in compensatory damages.

The second phase of the bifurcated trial then considered the question of an appropriate amount of punitive damages. Aldworth and Keystone did not move for a directed verdict at the conclusion of this phase of the trial. Soon afterward, the jury found that all three defendants had "acted or failed to act with the specific intention to cause harm," and assessed punitive damages of $250,000 against Barron and $1 million each against Aldworth and Keystone. The trial court entered judgment in accordance with the jury's verdict.

---

[1] Barron himself, having been served only by publication, had no actual involvement in the case.

Aldworth then moved to set aside the default judgment, for a new trial, and for j.n.o.v. Keystone also moved for a new trial and for j.n.o.v. The trial court denied these post-trial motions, and this appeal followed.

### Case No. A05A1546

1. Aldworth first contends that the default judgment against it should have been set aside because New Jersey law barred the entry of such a judgment against it after its insurer, Reliance, had been declared insolvent, and that its motions for new trial and for j.n.o.v. should have been granted for the same reason. We disagree.

Aldworth is correct when it asserts that the New Jersey law establishing an insurer insolvency pool specifies the circumstances in which a default judgment can be entered against a New Jersey insured whose insolvent insurer has failed to defend that insured. The relevant statute provides:

> With respect to any covered claims arising from a judgment under any decision, verdict or finding *based upon the default of the insolvent insurer or its failure to defend an insured*, the association either on its own behalf or on behalf of such insured may apply to have such judgment, order, decision, verdict, or finding set aside by the court in which such judgment, order, decision, verdict or finding is entered and shall be permitted to defend against such claim on the merits.

(Emphasis supplied.) N.J.S.A. 17:30A-18. Contrary to Aldworth's contention, however, this statute does not mean that a default judgment could *never* have been entered against *Aldworth* after Reliance had been declared insolvent. Rather, its plain terms allow us to set aside *only* those judgments "based upon the default of the insolvent insurer or its failure to defend an insured," and not those judgments arising from the fault, and the ensuing default, of the insured itself.

Here, Keystone, a New Jersey corporation, held a Reliance policy listing Aldworth as an additional insured. Keystone tendered the defense of the Englands' action to NJ-PLIGA, which accepted that defense as its responsibility under New Jersey law. Thus NJ-PLIGA was obligated to provide a defense and coverage for its insureds, although only to the extent New Jersey law provides. See, e.g., *Johnson v. Braddy*, 376 N.J. Super. 215, 219 (869 A2d 964) (2005) (insured is personally liable for judgment in excess of $300,000 statutory cap).

In its response to the Englands' motion for default judgment, however, Aldworth provided no evidence whatsoever concerning its timely tender of the Englands' suit to Keystone and Reliance, relying instead on the conclusory and unverified statement that the failure to defend the case "[was] not owing to any negligence or fault of Aldworth." Even in its motion to set aside, brought after trial, Aldworth presented no evidence that it had contacted either Keystone or Reliance to ensure that the suit would be defended properly. Since we cannot say that the trial court abused its discretion when it rejected Aldworth's mere assertion that Reliance, and not itself, was responsible for its default, we must sustain the default judgment entered against Aldworth in this case. See N.J.S.A. 17:30A-18; OCGA § 9-11-60 (d) (2); *The Pantry, Inc. v. Harris*, 271 Ga. App. 346, 347 (2) (609 SE2d 692) (2005) (trial court did not abuse discretion in denying motion to set aside default judgment where movant's negligence contributed to initial default).

2. Aldworth next contends that in light of the fact that the Englands proved less than $10,000 in special damages, including lost wages and medical expenses, the jury's award of $750,000 in compensatory damages must be set aside as against the weight of the evidence.

"The question of damages is ordinarily one for the jury[,] and the court should not interfere with the jury's verdict unless the damages awarded . . . are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). "The only guideline for awarding damages for pain and suffering is the enlightened conscience of an impartial jury. If the award is not so flagrant as to 'shock the conscience,' it will not be disturbed on appeal." (Citations and punctuation omitted.) *Whitley v. Ditta*, 209 Ga. App. 553, 554-555 (2) (434 SE2d 108) (1993). Likewise, we will not disturb a trial court's denial of a motion for new trial or for j.n.o.v. if there was any evidence to support the jury's verdict. *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431, 433 (1) (587 SE2d 876) (2003); *Foxchase, LLLP v. Cliatt*, 254 Ga. App. 239, 240 (562 SE2d 221) (2002).

Here, Aldworth has defaulted on the merits, including the factual questions (1) whether Aldworth knew that Barron was incompetent to drive the truck, (2) whether Aldworth showed conscious indifference to the consequences of allowing Barron to drive, (3) whether Barron was acting within the scope of his employment when he assaulted Mrs. England, and (4) whether Mrs. England suffered severe emotional distress as a result of the attack. These factual admissions provide ample evidence to support the conclusion of law reached in the Englands' complaint — that is, that Aldworth's negligence was the proximate cause of their injuries, including their

pain and suffering. See *Hope Electric Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 303-304 (2) (601 SE2d 723) (2004) (default operates to admit the well-pled allegations of complaint and the fair inferences and conclusions of fact to be drawn therefrom); *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981). Given this firm factual and legal foundation, we cannot say that the jury's award of $750,000 in compensatory damages jointly and severally against Aldworth and Keystone is so excessive as to shock the conscience. See *E-Z Serve Convenience Stores v. Crowell*, 244 Ga. App. 43, 47 (2) (535 SE2d 16) (2000) (affirming award of $350,000 for employer's intentional tort resulting in employee's 24-hour stint in jail); *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 361-362 (7) (514 SE2d 691) (1999) (affirming award of $418,000 for defendant's wrongful instructions that plaintiff's deceased husband's eyes be removed as well as its subsequent attempts to conceal removal); *Whitley*, supra, 209 Ga. App. at 554-555 (2) (affirming award of nearly $210,000 against one defendant when medical damages in negligence action amounted to less than $10,000).

3. Finally, Aldworth attacks the award of punitive damages on two grounds: (a) that it must be capped at $250,000 because there was no evidence to support the jury's finding that it acted with a specific intent to cause harm (see OCGA § 51-12-5.1 (f), (g)); and (b) that it was so excessive as to deny Aldworth due process.

(a) Aldworth first contends that because there was no evidence to support the jury's finding of specific intent to cause harm, the punitive damages award was in excess of the $250,000 damages cap set in OCGA § 51-12-5.1 (g) and must therefore be set aside. Aldworth failed to move for directed verdict at the close of the second phase of trial or to assert this objection to the verdict in its motion for new trial below, however. It has thus waived this argument on appeal. See *Bell v. Owens*, 230 Ga. App. 826, 828 (3) (497 SE2d 591) (1998) (failure to renew motion for directed verdict as to availability of punitive damages waives issue on appeal).

(b) On appeal, we review a jury's award of punitive damages under the rubric of the Fourteenth Amendment's Due Process Clause by considering three factors:

(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm &c. Ins. Co. v. Campbell*, 538 U. S. 408, 418 (II) (123 SC 1513, 155 LE2d 585) (2003); *BMW of North America v. Gore*, 517 U. S. 559, 575-585 (III) (116 SC 1589, 134 LE2d 809) (1996).

As a preliminary matter, we note that Aldworth neither objected to the verdict form presenting the question whether it acted with a specific intent to cause harm for the jury's consideration nor moved for a directed verdict on the matter. Moreover, in response to written questions from the jury, the trial court asked the parties whether an award of punitive damages could be predicated on a default judgment alone. After hearing from counsel for the Englands, the court concluded that the jury could simply award zero dollars. Counsel for Aldworth neither contributed to the discussion nor objected to the result reached. Thus, as Aldworth concedes, it cannot now assert that the Englands were not entitled to *any* punitive damages as a matter of law. See *Bell*, supra, 230 Ga. App. at 828 (3); see also *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 254 Ga. App. 598, 603 (2) (a) (ii) (563 SE2d 178) (2002) (rejecting argument that an excessive verdict can amount to a mistake of law, deferring to jury's factual determination instead, and sustaining punitive award of $257,000,000).

The only remaining question is thus whether the award of punitive damages in the amount of $1 million is so excessive as to deny Aldworth due process under the law. See *Time Warner*, supra, 254 Ga. App. at 603-605 (2) (b) (weighing three due process factors of *Gore*). As we consider this question, moreover, we recall the ancient admonition that "it is very dangerous for the judges to intermeddle in damages for torts; it must be a glaring case indeed of outrageous damages in a tort, and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages." Id. at 602 (2) (a) (ii), quoting *Huckle v. Money*, 2 Wils. 205, 95 Eng. Rep. 768 (K. B. 1763).

(i) *Reprehensibility.* Here, Aldworth's default had the effect of admitting both that it had entrusted the truck to Barron knowing that he could not operate it safely and that it had showed a "conscious indifference to [the] consequences" of that entrustment. Faced with this admission of recklessness and indifference in creating the circumstances under which Barron's assault took place, we must hold that Aldworth's conduct was indeed sufficiently reprehensible to justify the imposition of punitive damages. See *Time Warner*, supra, 254 Ga. App. at 605-606 (3) (b) (i) (affirming award of punitive damages on basis of defendants' "callous indifference to the financial well-being" of investors); *Kothari v. Patel*, 262 Ga. App. 168, 173-174 (2) (585 SE2d 97) (2003) (plaintiffs needed to prove specific intent to harm by only a preponderance of the evidence).

(ii) *Ratio.* The jury granted the Englands punitive damages in the amount of 1.3 times its award of compensatory damages — a ratio

we have specifically approved in the past, and one which does not "approach that fuzzy line suggesting the bounds of constitutional impropriety." *Time Warner*, supra, 254 Ga. App. at 606-607 (3) (b) (ii). Nor has Aldworth argued or presented evidence to the effect that the $1 million award against it was disproportionate considering its net worth. Considering the $750,000 in compensatory damages awarded here, then, we have no basis for overturning the amount of punitive damages awarded. Id.

(iii) *Sanctions for Comparable Misconduct*. Finally, since Aldworth has admitted to at least recklessness in the sequence of events leading up to Barron's attack, and since battery is a crime for which individuals may be punished by up to one year's imprisonment (see OCGA §§ 16-1-3 (5), (9) (distinguishing felony and misdemeanor); 16-5-23.1 (defining battery)), we cannot say that the jury went too far when it decided to punish Aldworth to the extent of $1 million in punitive damages. See *TGM Ashley Lakes v. Jennings*, 264 Ga. App. 456, 462 (1) (b) (590 SE2d 807) (2003) (affirming punitive award of $250,000 against landlord accused of negligent hiring and retention of maintenance worker who later murdered a tenant, and noting that punitive damages may lie even when tort is committed outside scope of employment but within tortfeasor's working hours).

The trial court did not err in refusing to grant Aldworth's motions to set aside the judgment, for j.n.o.v., and for new trial.

### Case No. A05A1547

Keystone contends that the trial court erred when it denied its motions for new trial and for j.n.o.v. because (1) there was no evidence that Barron was acting within the scope of his employment when he exited his truck and assaulted Mrs. England; (2) there was no evidence that Keystone acted or failed to act with a specific intent to cause harm; and (3) New Jersey's statutory cap on damages must apply to this case. We disagree.

"[A]fter the rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citations and punctuation omitted.) *Williamson*, supra, 263 Ga. App. at 431. When a trial court denies both a motion for j.n.o.v. and a motion for new trial, we must affirm if there is any evidence to support the jury's verdict. See OCGA §§ 5-5-20; 5-5-21.

4. Keystone first argues that Barron was not acting within the scope of his employment at the time he left his truck and assaulted Mrs. England. Despite a suggestion from the trial court that "defendants quite often move for directed verdict at the close of the plaintiff's case," however, counsel for Keystone never moved for a directed

verdict on the issue whether Barron was acting within the scope of his employment *after* he pulled into the gas station. Nor did Keystone object to the verdict form as it went out to the jury. Instead, Keystone did not raise the issue until its motion for new trial, in which it asserted only that the award of compensatory and punitive damages was "contrary to [the] evidence."

As we have held in Division 3 above, where a party fails to make or timely to renew a motion for directed verdict, that party cannot complain on appeal that the factfinder had no right to consider the issue involved as a matter of law. See *Bell*, supra, 230 Ga. App. at 828 (3). Since Keystone failed to move for a directed verdict on the issue whether it could be held liable for Barron's actions after leaving his truck or to object to the verdict form presenting the issue to the jury, we must affirm the trial court's denial of Keystone's motion for j.n.o.v. on this ground. Id.; *Lincoln v. Tyler*, 258 Ga. App. 374, 376 (1) (574 SE2d 440) (2002).

Even if we were to hold that Barron left the scope of his employment when he exited his truck (see, e.g., *New Madison South Ltd. Partnership v. Gardner*, 231 Ga. App. 730, 732-733 (1) (499 SE2d 133) (1998)), Keystone's failure to move for a directed verdict on this issue allowed the jury to find that Barron was acting within the scope *at some point between* the time he first crossed into the Englands' lane and the time he left the gas station. Since there was therefore *some* evidence to support the jury's verdict that Barron was acting within the scope of his employment during the *entire* altercation with the Englands, we must deny Keystone's motion for new trial as well. See *Williamson*, supra, 263 Ga. App. at 433 (1).

5. Keystone next contends that there was no evidence to support the jury's finding that it acted with a specific intent to cause harm, and that it therefore could not be assessed punitive damages in excess of $250,000. See OCGA § 51-12-5.1 (f). Again, however, Keystone neither moved for a directed verdict on the issue of its specific intent to cause harm nor objected to the verdict form putting that issue before the jury. Thus Keystone has waived any objections it may have had concerning this issue on appeal. *Bell*, supra, 230 Ga. App. at 828 (3).

6. Finally, Keystone contends that the trial court erred when it denied its motions for new trial and to supplement the record concerning New Jersey's statutory cap limiting damages against an insured to $300,000. See N.J.S.A. 17:30A-8 (a) (1). Once again, however, Keystone failed to move for any kind of directed verdict on damages, including this limitation under New Jersey law. Thus it has waived the issue on appeal. *Bell*, supra, 230 Ga. App. at 828 (3).

*Judgments affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED SEPTEMBER 28, 2005 —
RECONSIDERATION DENIED OCTOBER 20, 2005 — 

*Mozley, Finlayson & Loggins, Carroll G. Jester, Jr., Marvin A. Riddle*, for Aldworth Company, Inc.

*Mabry & McClelland, Robert M. Darroch, Samantha R. Johnson*, for Keystone Freight Corporation.

*Kam, Ebersbach & Lewis, Randy J. Ebersbach, Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Stone & Boehm, Earnest H. Stone*, for England et al.